**In the Matter of the**
**WELFARE OF D.M.**

No. C3-85-268.

Court of Appeals of Minnesota.

Sept. 10, 1985.

William R. Kennedy, Hennepin County Public Defender, David M. Duffy, Asst. County Public Defender, Minneapolis, for appellant D.M.

Hubert H. Humphrey, III, Atty. Gen., State of Minnesota, St. Paul, Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, J. Michael Richardson, Paul D. Schneck, Asst. County Attys., Minneapolis, for respondent.

Heard, considered, and decided by PARKER, P.J., and HUSPENI and FORSBERG, JJ.

## OPINION

HUSPENI, Judge.

On May 30, 1984, a petition of delinquency was filed in Hennepin County, charging appellant D.M. with attempted first degree murder. (The petition was later amended to include a charge of first degree assault.) The charged offense occurred on May 25, 1984, when D.M. was seventeen years and ten months old. Following a reference hearing, the trial court granted the State's petition for reference and referred the case to the Hennepin County Attorney for adult prosecution. D.M. appeals the trial court's reference order. We affirm.

## FACTS

D.M. was arrested on May 27, 1984 and accused of stabbing the manager of the Driskall's Super Valu in Eden Prairie on May 25, 1984. The multiple-stabbing resulted in life-threatening injuries, was unprovoked, and was not associated with any attempt to rob the store.

The State sought certification of D.M. as an adult. D.M. waived a probable cause hearing. The court then ordered a reference investigation pursuant to Rule 32.03 of the Minnesota Rules of Procedure for Juvenile Courts. The State also moved the court to find a prima facie case for reference based upon the State's delinquency petition and the available police reports.

After a hearing on the State's motion, the juvenile court issued an order finding that the State had made a prima facie case for adult reference pursuant to Minn.Stat. § 260.125, subd. 3(1)(a) (1984) based solely upon the delinquency petition.

Before the reference hearing began, D.M. moved the court to vacate its finding of a prima facie case for adult reference. The court took the matter under advisement until after the reference hearing. At the close of the reference hearing, the court denied D.M.'s motion.

The evidence at the reference hearing detailed D.M.'s history. D.M. was born on July 12, 1966 and is now nineteen years old. He was adopted at the age of three. His adoptive father was an alcoholic and left home when D.M. was twelve. D.M. was always a quiet and withdrawn child, and he did not do well in school. His previous juvenile court record consists of one contact with the juvenile court system for truancy in 1982.

D.M. was a heavy marijuana user and was involved in an outpatient drug treatment program at the Renaissance Adolescent Treatment Center in Bloomington for about ten weeks in 1983. Both of his parents participated in this treatment program with him. (By this time, his adoptive father had gone through treatment for his own alcoholism.) D.M. was uncooperative during this program. The Renaissance Adolescent Treatment Center recommended that D.M. enter an inpatient drug treatment program at the Shanti House in Minneapolis. D.M. was at the Shanti House from August 1983 through February 1984. He had one unexcused absence during that time.

D.M. did not cooperate with the Shanti House treatment program and in February 1984 he returned to his mother's home. His mother and he entered a "contract" upon his return home which required him to abstain from drug use, attend school, obtain a part-time job and abide by a curfew. If he broke the agreement by using drugs, he could not live in his mother's home. Shortly before the May 25 incident, D.M.'s mother discovered that he had not been attending school and she subsequently learned that he had been using drugs.

There was no evidence that D.M. ever committed any violent or aggressive acts other than the alleged offense. His general demeanor is very withdrawn.

There was evidence at the reference hearing, that at the time of D.M.'s arrest and since then, D.M. has expressed great remorse for his actions. Three Hennepin County staff members who have had contact with D.M. at the Hennepin County Juvenile Detention Center testified that D.M. has been a model resident while he has been at the Detention Center.

Marian Kapusta, a probation officer at the Hennepin County Juvenile Court who prepared the reference study, testified in detail about her recommendation that D.M. be referred for adult prosecution. She testified about the various treatment options for juveniles and concluded that there was not a facility within the juvenile court system which could adequately treat D.M. before he turned nineteen.

Dr. Ronald Jorgensen, the chief psychologist of the Hennepin County Department of Court Services, testified about his examination of D.M. He testified that, assuming the allegations against D.M. were true, there was a risk that D.M. would repeat his actions, since testing of D.M. showed that he lacked "a well-developed system of conscience" and was subject to manipulative and impulsive behavior. In addition, he testified that people with these types of behavior problems do not respond well to available treatment in terms of reducing their impulsive and manipulative behavior. He also strongly suggested that D.M. had a personality disorder. On cross-examination, Dr. Jorgensen testified that D.M. showed no strong signs of aggression and no signs that he would seek out victims. He concluded that, given D.M.'s age, the time limitations on treatment and the available facilities, D.M. was not amenable to treatment in the juvenile court system and that the public safety would not be served by keeping him in the juvenile court system.

John Handy, the program director of the Minnesota Department of Corrections at the Red Wing Training School for Boys, testified that there was not enough time to treat D.M. at the Red Wing facility. He also testified about the lack of security at that institution.

Allen Larson, a detective of the Eden Prairie Department of Public Safety, testified about the investigation of the May 25 offense and the resulting police reports.

D.M.'s parents' testimony was that D.M. was remorseful and ready to confront his problems. They testified that their relationship with D.M. had improved since he was arrested and they thought he would succeed in a treatment program.

The court issued an order granting the State's petition for reference and denying D.M.'s motion seeking to extend the juvenile court's jurisdiction beyond D.M.'s nineteenth birthday. D.M. appeals from the juvenile court's reference order.

## ISSUES

1. Did the juvenile court err in finding that the State established a prima facie case for adult reference based only on the delinquency petition?

2. Did the juvenile court err in determining that D.M. is not suitable to treatment and that the public safety is not served by retaining him in the juvenile court system?

3. Did the juvenile court err in admitting police reports at the reference hearing?

4. Does Minn.Stat. § 260.181 (1984) violate D.M.'s equal protection rights?

## ANALYSIS

### I.

■ The State may prove its case for reference *either* by clear and convincing evidence of nonamenability to treatment or dangerousness pursuant to Minn.Stat. § 260.125, subd. 2 (1984) *or* by proof of an offense establishing a prima facie case under Minn.Stat. § 260.125, subd. 3 (1984). The effect of a prima facie finding is that the burden shifts to the juvenile to establish that he is amenable to treatment and that the public safety is served by retaining him in the juvenile court system.

The relevant portions of Minn.Stat. § 260.125 provide:

Subd. 2. * * * [T]he juvenile court may order a reference only if:

\* \* \* \* \* \*

(d) The court finds that

\* \* \* \* \* \*

(2) the prosecuting authority has demonstrated by clear and convincing evidence

that the child is not suitable to treatment or that the public safety is not served under the provisions of laws relating to juvenile courts.

Subd. 3. A prima facie case that the public safety is not served or that the child is not suitable for treatment shall have been established if the child was at least 16 years of age at the time of the alleged offense and:

(1) Is alleged by delinquency petition to have committed an aggravated felony against the person and (a) in committing the offense, the child acted with particular cruelty or disregard for the life or safety of another * * *.

Minn.Stat. § 260.125 (1984). *See also* Minn.R.P.Juv.Ct. 32.05.

The juvenile court found that the State proved its case for reference under both subdivisions of section 260.125. The juvenile court first concluded that the State demonstrated by clear and convincing evidence that D.M. is not suitable for treatment and the public safety would not be served by retaining D.M. in the juvenile court system. The court also found a prima facie case pursuant to section 260.125, subd. 3(1)(a): the delinquency petition alleged an aggravated felony and, in committing the offense, D.M. acted with particular cruelty or disregard for the life or safety of the victim. The court concluded that D.M. did not rebut the State's prima facie case for reference.

The first issue raised by D.M. is that the juvenile court erred in finding that the State had established a prima facie case for adult reference under section 260.125, subd. 3(1)(a) based solely on the delinquency petition. Specifically, D.M. argues that the court erred in finding that D.M. acted with particular cruelty and disregard for the life and safety of the victim based only on the delinquency petition. D.M. contends that section 260.125, subd. 3(1)(a) itself and general notions of due process required the juvenile court to receive evidence on this particular element before finding a prima facie case for reference.

Section 260.125, subd. 3(1)(a) permits a court to rely on a delinquency petition to find the "particular cruelty and disregard for life" element. Significantly, all the other grounds for finding a prima facie case are objective and easily determinable. None of the other bases require any evidence other than the delinquency petition and the child's past juvenile record. Hence we can infer that the legislature intended the "particular cruelty and disregard for life" element to be easily determinable based upon the allegations in the delinquency petition.

Even if the juvenile court erred in relying solely on the delinquency petition, it did not commit prejudicial error since the court made an alternative determination for reference.

## II.

Alternatively, the juvenile court determined that the State demonstrated by clear and convincing evidence that D.M. is not amenable to treatment and the public safety is not served by retaining D.M. in the juvenile court system. D.M. argues that this determination is in error.

■ On review, the juvenile court's findings will not be disturbed absent a showing that they are "clearly erroneous" so as to constitute an abuse of discretion. *In re Welfare of J.R.D.*, 342 N.W.2d 162, 166 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Mar. 15, 1984) (quoting *In re Welfare of Hartung*, 304 N.W.2d 621, 624 (Minn.1981)).

In order for a juvenile court to order reference, Minn.Stat. § 260.125, subd. 2(d)(2) only requires a juvenile court to determine *either* that the child is not suitable for treatment *or* that the public safety is not served by continuing the matter in the juvenile court system. The court in this case made both determinations.

### A. Amenability To Treatment

The juvenile court's conclusion of non-amenability to treatment is based upon (1) D.M.'s prior history of treatment at the

Renaissance Adolescent Treatment Center and the Shanti House and (2) it's finding that there was not enough time to treat D.M. before he turned nineteen and the juvenile court's jurisdiction over him terminated.

■ A juvenile court's determination that a juvenile cannot be successfully treated before the juvenile court's jurisdiction is terminated is a proper basis for concluding that a juvenile·is unsuitable for treatment. *In re Welfare of Dahl,* 278 N.W.2d 316, 319 (Minn.1979). This determination must be based on psychological data or a history of misconduct as well as the juvenile's age, level of maturity and the seriousness of the alleged offense. *Id.* at 320.

■ Here, there was psychological data supporting the juvenile court's conclusion. The psychologist opined that a successful treatment program would require about three years and that, since D.M. would be beyond the juvenile court's jurisdiction in less than six months after the hearing, he is not amenable to treatment.

We recognize that D.M. does not have a long history of prior contacts with the juvenile court system. There is strong evidence in the record, however, that there is not a treatment program within the juvenile justice system which D.M. could have successfully completed before he turned nineteen.

This case is similar to *In re Welfare of Haaland,* 346 N.W.2d 190 (Minn.App.Ct. 1984). In *Haaland,* the juvenile was charged with the rape of a sixty-three year old woman. He was almost eighteen and had no prior criminal history. We affirmed the trial court's finding that the juvenile was not amenable to treatment on the basis that the juvenile could not complete a treatment program within the juvenile court system before he reached nineteen. *Id.* at 193. *See also In re Welfare of J.R.D.,* 342 N.W.2d at 166.

We conclude that the trial court's determination that the State demonstrated by clear and convincing evidence that D.M. is not suitable for treatment in the juvenile court system is not clearly erroneous.

**B. Threat to Public Safety**

The juvenile court also found that the State proved by clear and convincing evidence that the public safety is not served by continuing this matter in the juvenile court system. The juvenile court appears to have based this determination on the seriousness of the charged offense, the lack of available secure facilities and the psychologist's testimony regarding D.M.'s behavior.

■ The factors for a juvenile court to consider in determining if a child is a threat to public safety are:

(1) The seriousness of the offense in terms of community protection;

(2) the circumstances surrounding the offense;

(3) whether the offense was committed in an aggressive, violent, premeditated, or willful manner;

(4) whether the offense was directed against persons or property;

(5) the reasonably foreseeable consequences of the act; and

(6) the absence of adequate protective and security facilities available to the juvenile treatment system.

*State v. Hogan,* 297 Minn. 430, 438, 212 N.W.2d 664, 669–70 (1973). Rule 32.05 of the Minnesota Rules of Procedure for Juvenile Courts codifies this list and adds to it. In the final analysis the juvenile court should consider the "totality of the circumstances." Minn.R.P.Juv.Ct. 32.05, subd. 2. A juvenile cannot be referred for adult prosecution solely because of the alleged offense. *In re Welfare of K.P.H.,* 289 N.W.2d 722, 725 (Minn.1980) (citing *Dahl,* 278 N.W.2d at 321). The record must contain direct evidence of dangerousness in addition to the inferences which may be drawn from the commission of the offense itself. *Id.* at 725.

Given the seriousness of the alleged offense, D.M.'s history of chemical abuse, the psychologist's assessment of D.M.'s behav-

ior and testimony about the lack of secure juvenile treatment facilities, the juvenile court's finding was not clearly erroneous.

### III.

D.M. next contends that the juvenile court erred in admitting police reports into evidence for the purpose of showing whether D.M. was amenable to treatment or a threat to public safety.

 A reference hearing is a dispositional hearing not governed by strict rules of evidence. *In re Welfare of S.R.J.*, 293 N.W.2d 32, 35 (Minn.1980). The general evidentiary test is whether the evidence is relevant and material. *Id.*

In *S.R.J.*, the supreme court unequivocally states that "police reports are admissible at a reference hearing." *Id.* at 36. *S.R.J.* specifically deals with whether police reports are admissible for determining whether a juvenile is a threat to public safety. *Id.* We do not consider that *S.R.J.* is limited to the public safety issue. A juvenile court can also consider police reports as they relate to a juvenile's amenability to treatment. The trial court properly admitted the police reports into evidence.

### IV.

D.M.'s final argument is that Minn.Stat. § 260.181 (1984) as applied to him violates his equal protection rights.

Section 260.181, subdivision 4 provides that the juvenile court's jurisdiction continues until a person is nineteen years old. D.M. requested an extension of the juvenile court's jurisdiction so that he could remain in the juvenile court system until he completed the necessary treatment. The court denied his request. Consequently, D.M. asserts that he is denied the same protection of the juvenile court system which would be given to other juveniles who were younger and could finish their treatment before turning nineteen.

The Minnesota Supreme Court addressed the constitutionality of the reference procedure in *In re Welfare of I.O.S.*, 309 Minn. 78, 244 N.W.2d 30 (1976). In *I.O.S.*, the supreme court rejected the claim that the reference procedure is a denial of equal protection to the extent it imposes upon certain juvenile offenders a different or higher punishment than that imposed upon all other juvenile offenders for similar offenses. *Id.* 244 N.W.2d at 36–37.

While *I.O.S.* does not specifically address the age distinction which D.M. raises, *I.O.S.* is strong authority that distinctions based on the ages of juveniles are not a violation of equal protection. Accordingly, D.M.'s equal protection rights are not violated on the basis that other younger juveniles can remain in the juvenile justice system and finish their treatment.

### DECISION

The juvenile court did not err in determining that the State met its burden of proving its case for D.M.'s adult reference. Nor did the juvenile court err in admitting police reports into evidence at the reference hearing. Finally, Minn.Stat. § 260.-181, which terminates the juvenile court's jurisdiction when a person turns nineteen, does not violate D.M.'s equal protection rights.

Affirmed.