**In the Matter of the
WELFARE OF T.S.E.**

**No. C1-85-933.**

Court of Appeals of Minnesota.

Dec. 10, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James R. Wilson, Clearwater County Atty., Bagley, for the State.

Eugene R. Ouradnik, Bagley, for T.S.E.

Heard, considered and decided by CRIPPEN, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LANSING, Judge.

The State brought three motions to refer T.S.E. for prosecution as an adult: one based on a delinquency petition from Clay County alleging second-degree assault, another based on a Stearns County petition alleging unauthorized use of a motor vehicle and fleeing a peace officer, and the third based on a Douglas County petition alleging another charge of unauthorized use of a motor vehicle and fleeing a peace officer. The three motions were consolidated. The trial court ruled that T.S.E. rebutted the State's prima facie case under Minn.Stat. § 260.125, subd. 3(6), because the felony admissions had been obtained without full compliance with Minn.R.P.Juv. Cts. 21.03. The State appeals this ruling. The trial court also ruled that there was probable cause to believe T.S.E. had committed the offenses alleged in the delinquency petitions and that the State had shown by clear and convincing evidence that T.S.E. was not amenable to treatment in the juvenile system. T.S.E. appeals that ruling. We reverse as to the first ruling and affirm as to the second.

## FACTS

T.S.E. is a 17-year-old boy from Bagley, Minnesota. The present charges against him arose from two attempts in January 1985 to run from correctional facilities where he was being detained for other offenses. In support of its motion to refer T.S.E. for prosecution as an adult, the State first offered evidence to establish a prima facie case under Minn.Stat. § 260.-125, subd. 3(6), by showing that T.S.E. had admitted at least three felony offenses within 24 months. T.S.E.'s attorney objected to use of the admissions, claiming the trial court had accepted them without following the requirements of Rule 21.03 of the Rules of Procedure for Juvenile Courts. Rule 21.03 parallels the procedure for accepting an adult's guilty plea by requiring the court to advise the child of certain rights and to establish a factual basis for the plea.

On the basis of this objection, the trial court continued the hearing to obtain records of the prior admissions. On March 25, the State produced records of proceedings in which T.S.E. admitted to five charges of unauthorized use of a motor vehicle and one charge of second-degree burglary. The records show that T.S.E. was represented by counsel at all relevant times and that the trial court did not fully comply with Rule 21.03 in accepting any of the admissions.

On April 11 the State proceeded to establish under Minn.Stat. § 260.125, subd. 2, that reference was proper because there was "clear and convincing evidence that the child is not suitable to treatment or that the public safety is not served" by keeping the child in the juvenile system. *Id.*

William Frey, the assistant director of the Northwest Juvenile Training Center, testified that T.S.E. was there from May 1982 through June 1983. T.S.E. ran from the center two or three times. Frey said staff members requested that T.S.E. be placed elsewhere because they could do nothing more for him.

Thomas Meierhofer is a senior social worker at the adolescent treatment unit at Willmar State Hospital. T.S.E. was there from June 1983 through December 1983, when he ran away. T.S.E.'s diagnosis was "conduct disorder, undersocialized, aggressive." Because of T.S.E.'s lack of effort and progress, the staff felt that he would

be better served in a more "correctional oriented facility." Meierhofer said T.S.E. has done well academically, especially in math, and also has athletic and creative abilities. He said T.S.E. "had a lot of promise, [and] needed to find some way to channel himself but * * * was not doing that in our program."

Steven Donnay supervised T.S.E. at the Sauk Centre correctional facility. T.S.E. was there from January through September 1984. Donnay did not dispute that T.S.E. was suitable for treatment there until September 1984, when he was paroled. T.S.E. stayed in the Lockrem Group Home in Park Rapids from September 1984 until late October.

Ernie Clubb, the director of the Jack Pine Boys Home in Blackduck, Minnesota, testified that T.S.E. arrived there on October 21, 1984. The next day he was admitted to the hospital in Bemidji because he complained of abdominal pain; he ran away from the hospital in the middle of the night. He was sent to Sauk Centre on November 2. He remained there until November 20, when he was returned to the Jack Pine Boys Home, where he stayed for ten days. In Clubb's opinion T.S.E. needs secure, adult chemical dependency treatment.

Reynold Ellingson, the assistant director of the drug dependency rehabilitation center at Fergus Falls State Hospital, testified that T.S.E. was admitted to the open adult unit on December 4, 1984, and ran away on December 18. Testing showed that T.S.E. is emotionally immature, has little self-esteem, and has little ability to cope with stress.

T.S.E. was returned again to Sauk Centre on January 11, 1985, and has remained there ever since, except for the attempts to run on which the pending charges are based. The most significant reason Donnay believes T.S.E. is no longer suitable for treatment at Sauk Centre is the most recent escape attempt, which indicates to Donnay that "nothing's changed" in the year T.S.E. spent there.

Finally, James Schroeder testified that he has been T.S.E.'s probation officer since April 1982. Schroeder tried to find a foster home for T.S.E., but none of the 14 licensed homes in Clearwater County would accept him. He said none of T.S.E.'s relatives would accept him until he could demonstrate "that he had his head on straight."

Karel Knutson, T.S.E.'s grandfather, testified that the family thinks T.S.E. exhibits symptoms of hyperkinesia.

The trial court filed identical findings and conclusions on the three petitions. It found probable cause to believe the charged offenses had occurred and that within the past two years T.S.E. had admitted to or been found guilty of six offenses which would have been felonies if committed by an adult. In addition, the court found:

In all delinquency proceedings within the past twenty-four months * * * the juvenile has been represented by counsel. Upon the admission of the above felony offenses, counsel has, either on the record, waived the rights of the juvenile, or in one instance, the juvenile but not the attorney, signed a waiver of rights. In another instance the Court advised the juvenile of all his rights with the exception that the finding of the delinquency could lead to adult prosecution and on one occasion the court did specifically advise the juvenile that the admissions or findings of guilt could lead in the future to prosecution as an adult. On no occasion were all of the requirements of Rule [21.03] of the Rules of Juvenile Procedure followed.

The juvenile's attorney who had represented him on the previous matters stipulated that even though he had waived the juvenile's rights, that he never completely discussed these rights as set out in Rule [21.03] with the juvenile. The juvenile also stipulated that his counsel did not discuss these rights with him.

The child has a recent history of criminal behavior and a consistent defiance and lack of cooperation with authorities. * * * None of the placements were successful because, among other things, the child resisted authority, was uncooperative and ran away or escaped from the program.

There are no appropriate facilities suitable for treatment of the juvenile.

The trial court then concluded that the prima facie case presented under Minn. Stat. § 260.125, subd. 3(6), was rebutted because the admissions were not in compliance with Rule 21.03, but that the State had shown by clear and convincing evidence that T.S.E. was not suitable to treatment in the juvenile system. The court referred him for prosecution as an adult on all charges.

## ISSUES

1. Did the trial court err in finding probable cause to believe T.S.E. committed the offenses alleged in the delinquency petitions?

2. Did the trial court err in ruling that T.S.E. rebutted the State's prima facie case for reference under Minn.Stat. § 260.125, subd. 3(6)?

## ANALYSIS

### I

■ Minn.Stat. § 260.125, subd. 2(d), requires the court to find probable cause that the juvenile committed the offenses alleged in the delinquency petitions before referring the juvenile for prosecution as an adult. The State rested on the petitions and accompanying police reports to establish probable cause, and the trial court accepted them as sufficient. T.S.E. contends the State cannot establish probable cause by relying on the petitions alone.

The Juvenile Court rules provide that a showing of probable cause is to be made pursuant to Rule 11 of the Minnesota Rules of Criminal Procedure. *See* Minn.R.P.Juv. Cts. 32.05, subd. 1. Rule 11.03 of the Criminal Rules permits a *Florence* hearing on probable cause, *see State v. Florence*, 306 Minn. 442, 239 N.W.2d 892 (1976), and provides that a finding of probable cause shall be based upon "the entire record including reliable hearsay in whole or in part." The trial court's finding of probable cause in reliance on the petitions and police reports was not clearly erroneous. *See, e.g., In re Welfare of Haaland*, 346 N.W.2d 190, 193 (Minn.Ct.App.1984).

### II

■ The State may prove its case for reference either by clear and convincing evidence of nonamenability to treatment or dangerousness under Minn.Stat. § 260.125, subd. 2, or by proof of a prima facie case under Minn.Stat. § 260.125, subd. 3. *In re Welfare of D.M.*, 373 N.W.2d 845, 848 (Minn.Ct.App.1985).

■ The trial court apparently relied on a *Nordstrom*-type principle in ruling the admissions could not be used for reference purposes. In *State v. Nordstrom*, 331 N.W.2d 901 (Minn.1983), the Minnesota Supreme Court held that an uncounseled plea to a misdemeanor could not be used to enhance a subsequent offense to a gross misdemeanor absent an on-record waiver of the right to counsel. The State argues that despite the failure to fully comply with Rule 21.03, the admissions were properly accepted because T.S.E. was represented by counsel and because the record shows that the admissions were voluntarily and knowingly made. *See, e.g., State v. Simon*, 339 N.W.2d 907 (Minn.1983) (*Nordstrom* does not apply when the defendant was represented by counsel); *State v. Rau*, 367 N.W.2d 613 (Minn.Ct.App.1985) (uncounseled plea was voluntary and intelligent despite the court's failure to advise the defendant of his right to compulsory process).

Rule 15.03 of the Juvenile Court rules provides that the validity of a waiver is determined by the totality of the circumstances:

> These circumstances include but are not limited to: the presence and competence of the child's parent(s), guardian or guardian ad litem and their interest in protecting the child's rights, whether the child is represented by counsel, the child's age, maturity, intelligence, education, experience, and ability to comprehend.

A waiver in court of the right to counsel or any other right is to be made on the record. Minn.R.P.Juv.Cts. 15.04.

At all relevant times T.S.E. was represented by counsel. On all but one occasion

his mother and his grandfather (who is his guardian) were present. At one appearance the court advised him of all rights as provided in Rule 21.03 except for the possible effect an adjudication might have on a decision to refer for prosecution as an adult. On two occasions his attorney waived the reading of his rights on the record; once T.S.E. signed a waiver of rights; once there was no waiver; and on another occasion it is unclear, because the hearing transcript was not available, whether the rights were waived or read. By all accounts T.S.E. is an intelligent child, and he was at least 15 years old when the admissions were accepted. Under the totality of the circumstances, his admissions to at least three of the felony offenses were voluntary and intelligent. The trial court should have concluded that the State established a prima facie case for reference.

■ In finding the State proved by clear and convincing evidence that T.S.E. was not suitable for treatment in the juvenile system, the court effectively found that T.S.E. failed to rebut the prima facie case. *See In re Welfare of D.M.*, 373 N.W.2d at 848 (the effect of a prima facie finding is that the burden shifts to the juvenile to establish that he is amenable to treatment and that public safety is served by retaining him in the juvenile court system). The trial court concluded that other placements in the juvenile system were unsuccessful because T.S.E. "resisted authority, was uncooperative and ran away or escaped from the program."

■ We must conclude that the trial court did not clearly err in finding that T.S.E. was not suitable for treatment in the juvenile system. T.S.E. has resisted all efforts at treatment since his original placement at the Northwest Juvenile Training Center in 1982. There is nothing in the record to indicate why T.S.E. was originally placed there after his first delinquency adjudication or why less restrictive alternatives were not implemented. *Cf. In re Welfare of L.K.W.*, 372 N.W.2d 392, 398 (Minn.Ct.App.1985) (the court must take the least drastic step necessary to restore

law-abiding conduct). In fairness to him, the original, and possibly erroneous, placement seems to have set his course in the juvenile system. Most, if not all, of his subsequent offenses occurred in the course of running from increasingly restrictive detention facilities. The juvenile system must share the blame for the inability of this admittedly promising and intelligent teen-ager to stop running.

## DECISION

The trial court did not err in finding probable cause based on the delinquency petitions and police reports. The State established a prima facie case for reference by showing that T.S.E. committed at least three offenses within 24 months which would have been felonies if committed by an adult. T.S.E. failed to rebut the prima facie case.

Affirmed in part and reversed in part.