**In the Matter of the WELFARE OF: D.F.B., Child.**

**No. CX–88–900.**

Court of Appeals of Minnesota.

Oct. 18, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Raymond F. Schmitz, Olmsted Co. Atty., Debra A. Jacobson, Asst. Co. Atty., Rochester, for appellant Olmsted County.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for respondent D.F.B.

Thomas L. Johnson, Hennepin Co. Atty., Michael K. Walz, Asst. Hennepin Co. Atty., Minneapolis, for amicus curiae Minnesota County Attys. Assoc.

Heard, considered and decided by HUSPENI, P.J., and NORTON and HACHEY *, JJ.

## OPINION

HUSPENI, Judge.

Appellant Olmsted County challenges the trial court's findings, conclusions and order denying the motion to refer respondent D.F.B. for adult prosecution. We reverse and remand for further proceedings consistent with this opinion.

### FACTS

D.F.B.'s parents and two younger siblings were killed with an ax on February 18, 1988. D.F.B., age 16, was a sophomore in high school, and had discussed killing his family to obtain cash and a vehicle to travel to Florida with his friends. D.F.B. had detailed the killings orally to his friends, as well as by writing seven pages of "chores" necessary to effectuate his plans. D.F.B. and several friends also prepared a "hit list" of others to be terminated. Several friends testified, however, that this list was merely a joke.

After his family was killed (sometime around 3:00 a.m. on the date above), D.F.B. obtained cash and purchased groceries. He cut and dyed his hair. Subsequently, he purchased a hat and a watch, and slept overnight in a culvert. He was arrested the following day at the post office while talking on the telephone with a friend.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Appellant filed delinquency petitions based on first and second-degree murder pursuant to Minn.Stat. §§ 609.185(1), 609.-19(1) and 609.19(2) (1986). D.F.B. was placed in the custody of the Olmsted County Sheriff. Appellant moved for adult prosecution, which motion was denied on April 21, 1988.

D.F.B. had no history of delinquent behavior. Testimony and reports from several doctors indicate that a major depressive episode led to the killings. D.F.B. had been severely depressed for years. The evidence indicates that lack of communication in the family and D.F.B.'s fear of his father contributed to this depression. D.F.B. masked the depression with jokes and quick wit at school. The responsibility of keeping everyone else happy became overly burdensome in 9th grade, however. Some reports indicate D.F.B.'s depression was heightened when his brother left home (or was ousted) in the fall of 1987, and when two good friends moved away the same year. D.F.B. twice attempted suicide, once in June 1987, and again in September. Five months later his mother, father, sister and brother were killed. There were 22 wounds upon D.F.B.'s father's body, 19 upon the body of D.F.B.'s mother, 8 upon the body of his sister and 9 upon the body of his brother.

## ISSUE

Did the juvenile court appropriately interpret the 1980 amendments to Chapter 260 in denying appellant's motion for reference?

## ANALYSIS

### I.

*Reference Proceeding*

In order to refer a child for adult prosecution, the trial court must find (1) probable cause "to believe the child committed the offenses alleged in the delinquency petition" and (2) a demonstration by "clear and convincing evidence that the child is not suitable to treatment or that the public safety is not served under the provisions of law relating to juvenile courts." Minn.

Stat. § 260.125, subd. 2 (1986); *see also* Minn.R.Juv.Cts. 32.05. The parties agree that probable cause was shown.

■ The parties also agree that as a result of certain 1980 amendments to Chapter 260, appellant has established a prima facie case for reference to stand trial as an adult. Section 260.125, subd. 3 provides in pertinent part:

> A prima facie case that the public safety is not served or that the child is not suitable for treatment shall have been established if the child was at least 16 years of age at the time of the alleged offense and:
>
> \* \* \* \* \* \*
>
> (2) Is alleged by delinquency petition to have committed murder in the first degree; \* \* \*

D.F.B. is 16 years of age and is alleged to have committed the delinquent act of murder in the first degree.

The 1980 amendments were the legislative response to *In the Matter of the Welfare of Dahl*, 278 N.W.2d 316 (1979). In *Dahl*, a 17–year–old boy had been charged with delinquency for first degree murder. He had no history of prior delinquent acts. The supreme court vacated the trial court's reference order and remanded the matter observing:

> The legislature did not single out certain crimes for reference to adult prosecution, although it had that specific opportunity [footnote omitted]. The law does not say that all petitions filed in juvenile court alleging first degree murder are automatically subject to certification, nor does the statute provide that 17–year–old violators are automatically referred for adult prosecution. \* \* \*
>
> \* \* \* \* \* \*
>
> It appears in this case that reference was made because of age and seriousness of the crime, neither of which meets the statutory requirements. \* \* \* [T]he existing statutory framework does not authorize referral based on the specific crime charged.

*Id.* at 320–21.

The 1980 legislative amendments provided that age and seriousness of the crime

were, in fact, sufficient to create a prima facie showing that reference was appropriate. The legislature's response to the concerns expressed by the *Dahl* court regarding reference based solely on age and offense is unequivocal. In addition, case law subsequent to the 1980 amendments also recognizes that aspects of *Dahl* are no longer viable. In *Matter of the Welfare of J.F.K.*, 316 N.W.2d 563, 564 (Minn.1982), the supreme court stated:

> The conduct for which appellant will be prosecuted occurred after the recent amendment modifying the provisions of the Juvenile Code governing certification of juvenile offenders for adult prosecution became effective. * * * As amended, Minn.Stat. § 260.125, subd. 3 (1980), provides that the state can establish a prima facie case of unamenability and dangerousness simply by proving that at the time of the alleged act the juvenile was at least 16 along with one or more additional facts. One such fact is whether the juvenile is charged with an aggravated felony that was committed with particular cruelty or disregard for the safety or life of another. Minn.Stat. § 260.125, subd. 3(1) (1980).

*See also Matter of Welfare of S.R.L.*, 400 N.W.2d 382 (Minn.Ct.App.1987).

In addition to addressing difficulties which had been encountered in applying criteria of unamenability to treatment and public safety interests, the 1980 amendments also reflect a shift in legislative attitude regarding punishment as a goal of juvenile courts. Prior to the amendments the stated purpose of those courts was to secure care and guidance, and to serve the welfare of the minor child. *See* Juvenile Court Act, ch. 685, § 1, 1959 Minn.Laws 1275 (repealed 1980). Prior to 1980, legislative concentration had been directed toward rehabilitating all errant youths, not to punishing them. Thus, referral for adult prosecution was an exceptional disposition of juvenile offenders. Little legislative consideration was given to it. Feld, *Juvenile Court Legislative Reform and the Serious Young Offender: Dismantling the Rehabilitative Ideal*, 65 Minn.L.Rev. 167, 192 (1980).

Subsequent to the 1980 amendment, the "purpose" clause cited above applies only to dependent and neglected children. For youths charged with the commission of a crime, a more punitive approach is emphasized, and as to them the juvenile court operates to:

> promote the public safety and reduce juvenile delinquency by maintaining the integrity of the substantive law prohibiting certain behavior and by developing individual responsibility for lawful behavior.

Minn.Stat. § 260.011, subd. 2 (1986).

The trial court correctly assessed the impact of the 1980 amendments when it observed in its memorandum:

> the prosecution could have introduced evidence that the child was at least 16 years of age and charged with first degree murder and rested. If the child had not offered any evidence in rebuttal, that could have been a sufficient basis to refer the child to adult court for trial.

The trial court continued its memo with the following language:

> However, the child did introduce evidence to the contrary and did rebut the prima facie case.

## II.

We note initially that while the statutory amendments which created the prima facie case for reference did not address the question of the child's opportunity to rebut the prima facie case, such opportunity is implicit within the provisions of Rule 32.05, subd. 2 of Minn.R.Juv.Cts. which provides for further proceedings "if a prima facie demonstration * * * has been rebutted by significant evidence."

We examine the questions of what burden was placed upon D.F.B. in his attempt to rebut the state's prima facie case, what quantum of evidence might be deemed "significant" and whether the trial court correctly determined that D.F.B. had, in fact, rebutted the prima facie case.

*Burden*

The parties dispute the nature of D.F. B.'s burden on rebuttal. Appellant argues

that D.F.B. has the burden of persuasion in rebuttal and must establish by clear and convincing evidence that he is amenable to treatment and that public safety will be served by retaining him in the juvenile system. Appellant urges that this level of proof is justified because it is the burden borne by the prosecution in establishing a prima facie case.[1]

Consideration of Minn.R.Evid. 301 convinces us that appellant's position on this issue is unsound and that the burden of persuasion remains at all times upon the state:

> In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast.

*Id.* There is no clarifying language in either the statute or in the juvenile rules to indicate that the burden of persuasion shifts to the child. Absent specific indication from the legislature, we must conclude that it is only the burden of producing evidence which shifts.

### What is "significant" evidence?

■ Rule 32.05, subd. 2 requires that the child rebut the prima facie case by "significant evidence." Again, we are without judicial or legislative guidance to assist us in determining what quantum of evidence the word "significant" connotes. Is it the equivalent of "substantial" evidence?[2] We conclude it is not. The 1980 amendments effectively abrogated the presumption that certain children charged with delinquent acts should be dealt with in juvenile court and substituted for that presumption one which declared that children of a certain age charged with certain serious offenses should be tried as adults. It is proper to infer, we believe, that the requirement that a child rebut by "significant" evidence rather than by "substantial" evidence signaled an intent to impose upon a juvenile offender, against whom a prima facie case for reference had been established, a burden to go forward with a quantum of evidence greater than that which would be required to rebut a prima facie case in other civil matters.

Initially, we question whether D.F.B. was required to go forward both with evidence of his amendability to treatment *and* with evidence that the public safety is served under the provisions of laws relating to juvenile courts.[3] Inasmuch as the burden upon the state is to show only non-amenability to treatment *or* that the public safety shall not be served by retaining the child in the juvenile court system, it may be argued that the child's failure to go forward with evidence on both of these factors must inevitably result in failure to rebut. If such were the requirement, our resolution of the rebuttal issue would be summary. We discern no independent evidence presented by D.F.B. on the issue of

---

1. Appellant also relies on the language of *In the Matter of the Welfare of D.M.*, 373 N.W.2d 845 (Minn.Ct.App.1985) that "The effect of a prima facie finding is that the burden shifts to the juvenile to establish that he is amenable to treatment and that the public safety is served by retaining him in the juvenile court system." *Id.* at 848. We find appellant's reliance on *D.M.* to be unpersuasive. In that case the relevant issue before this court was whether the state had met its initial burden of establishing a prima facie case. We were not called upon in *D.M.* to address directly the issue of what burden was placed upon the child in rebutting a prima facie case.

2. In *Matter of the Welfare of S.R.L.*, this court stated that "the defense introduced *substantial* evidence rebutting the prima facie case" (emphasis added), 400 N.W.2d at 384. However, the determinative issue in *S.R.L.* was whether the state had met its burden of proof by clear and convincing evidence on the basis of the entire record, not whether the defense had rebutted by "significant" evidence.

3. The state did not rest on its established prima facie case and await the evidence that D.F.B. was required to present in rebuttal. Instead, the state presented testimony in its initial case regarding non-amenability to treatment and public safety issues. It anticipated D.F.B.'s evidence rather than responded to it.

public safety.[4]

*Trial Court's Findings*

We shall assume, however, for purposes of this analysis, that D.F.B. had the burden of going forward only with evidence of his amenability to treatment. The trial court's findings and conclusions included in relevant part:

Findings of Fact

1. The child is 16 years of age having been born October 3, 1971.

\* \* \* \* \* \*

5. The child has no history of illegal behavior, drug abuse, or aggressive behavior except for the incident alleged in this petition.

6. The child has been diagnosed as having a major depressive disorder and it has not been shown that he cannot be successfully treated by his 19th birthday.

CONCLUSIONS OF LAW

\* \* \* \* \* \*

2. The petitioner has failed to establish by clear and convincing evidence that the child is not suitable to treatment or that the public safety is not served under the provisions of law relating to the juvenile courts.

■ Although the findings and conclusions were accompanied by a lengthy memorandum of law, the basis upon which the court concluded that the prima facie case was rebutted by D.F.B. is not set forth. However, in subsequently addressing the totality of circumstances, the trial court did give substantial credence to the testimony of Dr. Gilbertson who stated that it was possible to treat an individual such as D.F.B., although major depressive episodes similar to the one D.F.B. suffered are likely to reoccur in over 50% of the cases. D.F.B. argues that this statistic is not a reliable indicator because the circumstances in cases vary greatly and do not provide a framework to determine the probability that a performance will be repeated. Dr. Gilbertson acknowledged, however, that there was a chance that the violent behav-

ior could be repeated by D.F.B., if D.F.B. again engaged in an intimate grouping. Dr. Gilbertson also testified that cooperation is needed for effective treatment, that there is no way to ensure the cooperation of the individual, that people may leave treatment, may fail treatment, or may develop additional problems once therapy is commenced.

Concerning the time remaining for treatment, Dr. Gilbertson testified that two and one-half years for treatment is a "luxury." "Typically," he stated, "most depressive disorders are treated in far a shorter time." He also testified, however, that successful treatment in two and one-half years would depend on cooperativeness, aggressiveness, and intensity of the programming. He concluded that if these factors were present, successful treatment could "very definitely" be accomplished, but conceded that he has no ability to determine if hypothetical treatment would be effective. He stated that the time necessary to treat is dependent upon the disorder, as well as the program in which the individual is placed.

Dr. Gilbertson further testified:

There are facilities that do boast security at least in the early part of the program and relax that security as the individual shows progress, improvement and [has] the capabilities then of graduating that individual to a less controlled setting.

Dr. Gilbertson also named two such secure facilities within the state. However, he did not state affirmatively that those facilities could offer D.F.B. the treatment he needs.

While we are troubled by the fact that expert testimony overwhelmingly indicated that treatment for D.F.B. should have as one of its primary goals development of intimate relationships, and that elsewhere in the expert testimony is strong evidence that the frustration which built in D.F.B. and caused him to behave in a violent manner would occur almost exclusively in intimate relationships, we nonetheless accept as not clearly erroneous the trial court's

---

**4.** Respondent argues that the issues of public safety and amenability to treatment are so intertwined that they may be addressed and resolved together. The statute lists them separately and we believe they should be so addressed.

determination that the prima facie case was rebutted.

## III.

### Totality of the Circumstances

 Finally, the trial court addressed each of those factors set forth in Rule 32.05, subd. 2,[5] which must be considered when a prima facie case is rebutted. Upon conclusion of that analysis, the trial court determined that under the totality of the circumstances the state had failed to carry the burden placed upon it in a reference hearing. The trial court expressed concern over the result reached when the law it deemed applicable was followed:

[The Rules of Juv.Cts.] apply much better to the typical juvenile being referred who has an extensive juvenile court history with various property and personal offenses. * * *

In 1979, the Minnesota Supreme Court decided the case of the *Welfare of Dahl*, 278 N.W.2d 316 (Minn.1979). That case involved a child of the age of 17 charged with first degree murder. * * * The child's prior record included only a two-day suspension for misconduct in school and a reckless driving conviction. There, the child was also a "B" student, had been involved in extracurricular activities, and was generally described as respected, trustworthy, and obedient. There had been no psychiatric or psychological examination of the child, and accordingly no such data was available to support the reference. The trial court had referred the child for prosecution. The Supreme Court reversed that decision because however correct the result seemed, it did not follow the law.

In this case, we have a similar child except that he has not even had a suspension from school or reckless driving conviction. While there have been psychological and psychiatric evaluations of the child, those evaluations provide little, if any, basis for reference to the adult court.

The Supreme Court in *Dahl* concluded that the decision to refer the child to adult court did not comply with statutory requirements. * * *

*It does not make sense that any person, if convicted of the crimes alleged in this case, should serve a sentence of less than three years.* However, the Legislature has not vested absolute discretion in me as a trial judge to decide this issue based on what my own feeling of justice should be. Rather, I am compelled to decide the case based upon the law as it exists at this time. I cannot modify that law * * *.

The case before me is very similar to that considered by the courts in *Dahl*. The Legislature has had an opportunity since that decision to change the law and for whatever reasons, has not done so. *In interpreting this statute then, I must apply the law as it now appears on the books and interpret that law in light of previous court decisions. In-*

---

5. Rule 32.05, subd. 2 provides in relevant part:
 If a prima facie demonstration * * * has been rebutted by significant evidence, the court * * * shall consider the totality of the circumstances [which may include but is not limited to]:
 (a) the seriousness of the offense in terms of community protection,
 (b) the circumstances surrounding the offense,
 (c) whether the offense was committed in an aggressive, violent, premeditated or willful manner,
 (d) whether the offense was directed against persons or property, the greater weight being given to an offense against persons, especially if personal injury resulted,
 (e) the reasonably foreseeable consequences of the act,
 (f) the absence of adequate protective and security facilities available to the juvenile treatment system,
 (g) the sophistication and maturity of the child as determined by consideration of the child's home, environmental situation, emotional attitude and pattern of living,
 (h) the record and previous history of the child,
 (i) whether the child acted with particular cruelty or disregard for the life or safety of another,
 (j) whether the offense involved a high degree of sophistication or planning by the child, and
 (k) whether there is sufficient time available before the child reaches age nineteen (19) to provide appropriate treatment and control.

*credibly, that law compels the conclusion that this child must be handled by the juvenile court.* * * * [emphasis added]

The trial court recognized that although the section 260.125, subd. 3 1980 amendatory language set forth the conditions under which a prima facie case for reference may be established, there was no amendatory language to guide the trial court when it determined that the prima facie case had been rebutted. At that point, pursuant to Rule 32.05, subd. 2, the state would once more be required to show by clear and convincing evidence that D.F.B. is not amenable to treatment or that the public safety is not served by retaining him in the juvenile court system.

If our search for legislative intent is limited to the amendatory language of section 260.125, subd. 3, we inevitably will be compelled to reach the conclusion reached by the trial court:

> The net result of the 1980 amendments has been to make it more difficult to refer children to adult court rather than easier as may have been intended * * *. * * * [I]n my judgment the 1980 amendments did not change the burden of proof, they only raised the degree of proof required. Instead of making it easier and more likely that children would be referred to adult court, the statute has had the opposite effect.[6]

In addition, if we are permitted to look only to the amendatory language of section 260.125, subd. 3, and to the language of Rule 32.05, we will be compelled to echo the trial court's determination regarding the continued viability of *Dahl;* that upon rebuttal of the state's prima facie case *Dahl* is still good law, and that in the absence of supporting psychological data or a history of misconduct, the child's age, the serious nature of the offense charged, social adjustment and maturity level are insufficient to support a finding that D.F.B. could not be successfully treated within

the juvenile court system. *See Dahl,* 278 N.W.2d at 320. The trial court placed considerable reliance upon the similarity between *Dahl* and this case, particularly emphasizing the fact that neither youth had a history of violent acts aside from the offenses charged. Clearly, the trial court retained D.F.B. in the juvenile court system because it believed that neither the statute nor *Dahl* permitted reference.

■■■ We cannot criticize the trial court's application of section 260.125, subd. 3 and *Dahl* to the facts as it found them. We believe, however, that broader consideration of the 1980 amendments to Chapter 260 is not only warranted but is required. Such consideration irrevocably leads us, as we are certain it would have led the trial court, to a determination that D.F.B. must be referred to stand trial as an adult.

Section 260.011, subd. 2 as amended in 1980, provides in relevant part:

> The purpose of the laws relating to children alleged * * * to be delinquent is to promote the public safety * * * by maintaining the integrity of the substantive law prohibiting certain behavior and by developing individual responsibility for lawful behavior.

If the words "maintaining the integrity of the substantive law prohibiting certain behavior" are to have any meaning, trial courts must have the authority to look beyond the specific characteristics of the child and the child's behavioral history in its analysis of the totality of the circumstances. We are persuaded by the language of section 260.011 that the trial court, upon rebuttal of the prima facie case, must not be hobbled by the statutorily weakened analysis of *Dahl* and of Rule 32.05, subd. 2, especially subd. 2(h) (the record and previous history of the child), as the trial court here so clearly believed itself to be.

We are convinced that the legislature intended the language of section 260.011 to ensure that the criminal justice system

---

**6.** We agree with the trial court's observation regarding degree of proof required. The 1980 amendments require clear and convincing evidence that the child is not suitable for treatment

or that public safety is not served under the provisions of laws relating to juvenile courts. 1980 Minn.Laws ch. 580, § 7.

would not be permitted to provide an excessively minimal response to an offense which had a major impact upon society. The brutal murders of these four family members has had a major impact on society. Retention of the alleged murderer within the criminal justice system for less than three years would constitute an excessively minimal response.

We conclude that the legislature intended to protect the strong and legitimate interest of the public in a fair response by the criminal justice system to a heinous crime. There can be no doubt that the offenses here are heinous and that the only fair response of the criminal justice system, as a matter of law, must be referral. The state's interest in the integrity of the substantive law, under the facts of this case, overcomes any consideration, however weighty, given by the trial court to the absence of anti-social or violent behavior in D.F.B.'s past.

We have considered returning this matter to the trial court for further consideration on the basis of our analysis of section 260.011. We conclude, however, that such is unnecessary. We have no doubt that upon reconsideration and application of section 260.011 to the facts of this case, the trial court unquestionably would reach the decision we have reached. We need look no further than the words of the trial court emphasized earlier in this opinion to be assured of that result.

## DECISION

The 1980 amendments to Chapter 260 of the Minnesota Statutes must be construed to give effect to both Minn.Stat. § 260.125 and Minn.Stat. § 260.011. Considered together, it is clear as a matter of law that D.F.B. must be referred for adult prosecution.

Reversed and remanded for further proceedings consistent with this opinion.