**In the Matter of the WELFARE OF D.F.B., Child.**

No. CX–88–900.

Supreme Court of Minnesota.

Dec. 9, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Raymond Schmitz, Olmsted Co. Atty., Deborah A. Jacobson, Asst. Co. Atty., Rochester, for appellant.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for respondent.

Thomas L. Johnson, Hennepin Co. Atty., Michael K. Walz, Asst. Co. Atty., Minneapolis, amicus curiae for Minnesota Co. Attys. Ass'n.

## ORDER

Based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that the petition by D.F.B. for review of the decision of the court of appeals be, and the same is, granted for the limited purpose of substituting our opinion, filed herewith, for that of the court of appeals.

Considered and decided by the court en banc without oral argument.

AMDAHL, Chief Justice.

In *Matter of Welfare of D.F.B.*, 430 N.W.2d 475 (Minn.App.1988), the court of appeals reversed a decision of the district court denying a motion by the state pursuant to Minn.Stat. § 260.125 (1986) to refer D.F.B., a juvenile, for prosecution as an adult. We granted D.F.B.'s petition for review not because we disagree with the ultimate decision of the court of appeals but in order to provide a different analysis as to why reference is required.

D.F.B., age 16, used an ax to kill his parents and a younger brother and younger sister. The experts seem to agree that D.F.B. had been depressed for a number of years, that he was experiencing severe depression at the time he committed the murders, and that his feeling that he was trapped in a family situation not to his liking somehow led him to the conclusion that the only remedy was to kill the parents. (D.F.B. has said that he killed the younger siblings not because he was angry with them but to spare them further pain.) The experts, however, disagree over the ultimate issue of whether D.F.B. is unamenable to treatment in the juvenile court system consistent with the public safety. Dr. Carl Malmquist, the psychiatrist consulted by the court, reported to the court that he has "serious reservations" as to whether D.F.B. can be treated appropriately and effectively in the juvenile court system before he reaches age 19. He recommended "long term" treatment with the aim of "a whole reconstruction of how [D.F.B.] deals with aggression." James Gilbertson, Ph.D., opined that D.F.B. can be treated successfully in 2½ years, and probably in considerably less time. However, he acknowledged that many such depressed people fail in treatment and/or have recurrences after treatment. It appears that the treatment programs for depression available in Minnesota generally provide security only as an initial component of the program.

After thoughtful and careful consideration, the district court concluded that the facts were analogous to those in *Matter of Welfare of Dahl*, 278 N.W.2d 316 (Minn. 1979), and that—given its conclusion that *Dahl* is still good law in a case such as this where the juvenile has produced substantial evidence of amenability to treatment in the juvenile court system consistent with the public safety—it had no choice but to deny the reference petition, much as it was otherwise inclined to grant the petition.

The court of appeals in a thoughtful opinion concluded that the district court misinterpreted the effect and the intent of the 1980 legislation enacted in response to our decision in *Dahl*. It concluded that keeping D.F.B. in the juvenile court system is inconsistent with the intent of the legislature expressed in those amendments and it therefore reversed the district court.

Our starting point is the *Dahl* case. In *Dahl* we held that the fact that the juvenile is already 18 at the time the delinquency petition is filed and the fact that the offense he is charged with is a serious offense such as first-degree pre-meditated murder alone are insufficient bases for certification under section 260.125. *Matter of Welfare of Dahl*, 278 N.W.2d 316, 320–21 (Minn.1979). Although we vacated the reference order in *Dahl*, we did not hold, as it has been assumed, that the reference in that case was unjustified. Rather, we remanded for a further hearing for the purpose of considering all of the relevant factors—not just age or seriousness of the offense—to determine if the statutory test of reference had been met. 278 N.W.2d at 321.

In 1980 the legislature did a number of significant things. One was to amend section 260.011, the statutory purpose section, which at that time said that the purpose of the juvenile court was to "secure for each minor * * * the care and guidance, preferably in his own home, as will serve the

spiritual, emotional, mental, and physical welfare of the minor and the best interests of the state * * *." Minn.Stat. § 260.011, subd. 2 (1978). The legislature retained this purpose for neglected and dependent children, but for those charged with delinquent acts the legislature said that the purpose was "to promote the public safety and reduce juvenile delinquency by maintaining the integrity of the substantive law prohibiting certain behavior and by developing individual responsibility for lawful behavior." 1980 Minn.Laws ch. 580, § 3, currently *codified at* Minn.Stat. § 260.011, subd. 2 (1986). The legislature also amended section 260.125, changing it to provide not only that the state has the burden of proving the need for certification (something it had before) but that the state had to meet this burden by clear and convincing evidence (something that was not clear before). 1980 Minn.Laws, ch. 580, § 7; *codified at* Minn.Stat. § 260.125, subd. 2(d)(2) (1986). More significantly for our purposes, the legislature adopted a matrix, setting forth various ways that the state could establish a prima facie case for reference, one being the situation presented by this case, where the child was at least 16 at the time of the act and has been alleged to have committed first-degree murder. 1980 Minn.Laws ch. 580, § 7; *codified at* Minn. Stat. § 260.125, subd. 3(2) (1986).

 We have decided a number of post-amendment reference cases. For example, we have made it clear that when the defendant produces "significant" or "substantial" evidence rebutting a prima facie case for reference under the statute, then the role for the juvenile court is to decide on the basis of the entire record, without reference to the prima facie case, whether the state has met its burden of proving by clear and convincing evidence that the juvenile is unamenable to treatment in the juvenile court system consistent with the public safety. *Matter of Welfare of J.F.K.*, 316 N.W.2d 563, 564 (Minn.1982); *Matter of Welfare of Givens*, 307 N.W.2d 489, 490 (Minn.1981). We used the word "substantial" evidence in *J.F.K., supra,* and the word "significant" in *Givens, supra.* We regard the words to be interchangeable.

Furthermore, it was our intent that the quantum of evidence connoted by these terms is that which is required to rebut a prima facie case in other civil matters. *See* Feld, *Juvenile Court Legislative Reform and the Serious Young Offender: Dismantling the "Rehabilitative Ideal",* 65 Minn.L.Rev. 167, 209–10 (1981). Minn.R. Juv.Ct. 32.05, subdivision 2, adopts the prima facie standard of the statute and uses the phrase "rebutted by significant evidence."

In this case the juvenile, D.F.B., came forward with evidence bearing both on amenability to treatment and on public safety. At least, in our opinion, the clear implication of the testimony of the defense expert, Gilbertson, is that he was not just of the opinion that D.F.B. could be treated successfully but was also of the opinion that he could be treated in the juvenile court system consistent with the public safety.

 The issue then becomes whether it can be said that the state met its burden of proof without regard to the presumption. In our view, once the district court concludes that the juvenile has rebutted the presumption, then the district court has to analyze the entire record, using the same basic multi-factor analysis discussed in *Dahl,* to see if it may be said that the state has proved by clear and convincing evidence that the juvenile is unamenable to treatment in the juvenile court system consistent with the public safety. Minn.R. Juv.Ct. 32.05, which sets forth the various circumstances that may be involved in the totality of the circumstances, supports this conclusion. Employing the multi-factor analysis in this case—which is what the trial court in *Dahl* was directed to do on remand—would justify a reference decision in this case even if the legislature's 1980 amendment of the purpose section was without significance. While we agree with the court of appeals' conclusion that the amendment of the purpose section makes it easier to conclude that reference is justified in this case, we do not agree with the implication that reference is justified any time a juvenile commits a heinous offense. Rather, reference in this case is justified because—bearing in mind the legislature's

revised statement of purpose and looking at all the factors listed in R. 32.05, including the offense with which D.F.B. is charged, the manner in which he committed the offense, the interests of society in the outcome of this case, the testimony of Dr. Malmquist suggesting that treatment of D.F.B. might be unsuccessful, and the weakness of Dr. Gilbertson's testimony—the state met its burden of proving by clear and convincing evidence that D.F.B. is unamenable to treatment in the juvenile court system consistent with the public safety.

A final issue is whether outright reversal rather than a remand to the district court is justified. The reference statute says that a juvenile court "may" order reference only if certain conditions are met. Minn.Stat. 260.125, subd. 2 (1986). The usual standard of review of the ultimate legal issue of whether the trial court erred in ordering or denying reference is the abuse-of-discretion test. *See, e.g., Matter of Welfare of J.F.K.*, 316 N.W.2d 563, 564 (Minn.1982). Applying this test can cut both ways. Recently in *Matter of Welfare of R.D.W.*, 407 N.W.2d 113 (Minn.App. 1987), *pet. for rev. denied*, (Minn.1987), the court of appeals held that the juvenile court abused its discretion in referring the juvenile for prosecution as an adult. It is unnecessary for us to decide whether this is a case in which the facts adduced at the reference hearing were such as to compel reference. As the court of appeals stated, it is clear from the trial court's opinion that the trial court wanted to refer the juvenile if the court could do so. 430 N.W.2d at 483. Concluding that reference was justified, the court of appeals correctly reversed the district court outright, in effect deciding the case as the district court had wanted to decide it.

In summary, we affirm the decision of the court of appeals reversing the decision of the district court denying the motion to refer D.F.B. for prosecution as an adult.

Affirmed.