**In the Matter of the WELFARE OF T.L.J.**

**No. C0–92–1414.**

Court of Appeals of Minnesota.

Feb. 2, 1993.

---

William R. Kennedy, Hennepin County Public Defender, Peter W. Gorman, Jeffrey G. Wagner, Elizabeth Scott, Asst. Public Defenders, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael Freeman, Hennepin County Atty., Donna J. Wolfson, Asst. County Atty., Minneapolis, for respondent.

* Retired judge of the Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI,

Considered and decided by PARKER, P.J., and KALITOWSKI and FOLEY *, JJ.

## OPINION

KALITOWSKI, Judge.

This appeal is from a reference order granting the state's petition to refer appellant T.L.J. for adult prosecution on charges of first degree attempted murder and first degree assault, and third degree assault. We affirm in part, reverse in part and remand.

## FACTS

Appellant T.L.J. was charged by delinquency petition with third degree assault against his sister, Mercedes Haynes, occurring on February 6, 1992. He was charged by separate petition with attempted first degree murder and first degree assault, against Steven Jack, occurring on February 9, 1992. On April 13, 1992, the state filed a motion to refer T.L.J. for prosecution as an adult. T.L.J., who was born on July 14, 1975, was 16 years old at the time of the offenses.

At the reference hearing, the state presented police testimony concerning the Haynes assault and the attack on Steven Jack. The state moved for admission of the police reports of both assaults, to which T.L.J. objected as inadmissible hearsay. The court admitted the police reports, subject to later argument by defense counsel that certain parts should be stricken as unreliable hearsay.

Officer Marie Przynski testified that Haynes told her she had been arguing with T.L.J. when he grabbed her and choked her with her necklace until she lost consciousness. T.L.J. had twisted Haynes' neck, exclaiming that it wouldn't "pop." Haynes stated she had been unconscious and in the hospital for a day and a half.

Sergeant Constance Leaf testified concerning the police investigation of the assault on Steven Jack. T.L.J. gave a state-

§ 2.

ment to police admitting his involvement, along with four other males, in this assault, which left Jack near death and in a coma for six weeks.

T.L.J. presented seven rebuttal witnesses. T.L.J.'s mother rebutted some of the state's evidence regarding the assault on Haynes. T.L.J.'s probation officer from Kansas City testified that T.L.J. had been successful on probation and had no violent incidents during his probationary period.

A juvenile corrections worker who had worked with T.L.J. at the Hennepin County juvenile detention center, testified that T.L.J. had a positive attitude and presented few problems. He testified T.L.J. was immature, and conceded T.L.J. had numerous reports for misbehavior. The defense also presented two witnesses who testified about the Red Wing and Colorado Rebound juvenile programs and their suitability for serious juvenile offenders.

Finally, the defense presented the probation officer and the psychologist who prepared the court-ordered reference study and psychological evaluation. Each recommended against referring T.L.J. for adult prosecution. The probation officer noted T.L.J.'s abusive family background, the fact he had never been placed outside the home and his "malleable" character as making him a good candidate for treatment. The psychologist testified that her tests showed that T.L.J. was emotional, but not a psychopath. She testified T.L.J. appeared to accept responsibility for his actions and was a low risk to escape. She concluded T.L.J. was amenable to treatment, but expressed reservations about the time remaining to treat him in the juvenile system, explaining that this was not a clinical decision but one for the court.

The state cross-examined the probation officer, who had completed only one other reference study, on procedures in the juvenile probation manual which had not been followed. The court expressed serious concerns about the propriety of the reference study.

At the beginning of the reference hearing, T.L.J. had moved to dismiss the reference motion on the grounds that the prima facie reference statute violated due process and equal protection and was void for vagueness. The court rejected the first two arguments but reserved a ruling on the void-for-vagueness challenge. At the end of the defense rebuttal evidence, the court declined to rule on the prima facie case, or whether it had been rebutted, because the constitutional issue was outstanding. The state requested that the court set a return date, but the court set only a tentative date, for use if needed.

The court issued an order ruling that the prima facie reference statute was not void for vagueness and referring T.L.J. for adult prosecution. The hearing was not reconvened and closing arguments were not heard. T.L.J.'s appeal from that order has been expedited.

## ISSUES

1. Did the trial court err in its evidentiary rulings?

2. Did the trial court err in granting the state's motion for reference for adult prosecution?

## ANALYSIS

### I.

■ T.L.J. argues the court erred in allowing hearsay evidence in the form of police reports of the two offenses. Minn. Stat. § 260.155, subd. 1 (1990) was amended in 1980 to provide that the rules of evidence "shall apply" in "hearings conducted pursuant to section 260.125 [juvenile reference statute] except to the extent the rules themselves provide that they do not apply." 1980 Minn.Laws ch. 580, § 12.

Before the 1980 amendment, the supreme court held that reliable hearsay was admissible in juvenile reference hearings. *See, e.g., In re Welfare of S.R.J.,* 293 N.W.2d 32, 35–36 (Minn.1980) (admission of evidence not governed by strict rules of evidence, but by whether it is relevant and material). Without specifically addressing the effect of the 1980 amendment, this court has held that police reports are admissible in reference hearings. *In re Wel-*

240

*fare of D.M.*, 373 N.W.2d 845, 851 (Minn. App.1985). T.L.J. argues that *D.M.* was wrongly decided. We disagree.

The supreme court has the primary responsibility for regulation of evidentiary matters. *State v. Dana*, 422 N.W.2d 246, 249 (Minn.1988) (quoting *State v. Burns*, 394 N.W.2d 495, 498 (Minn.1986)). The rules promulgated by the supreme court applicable to juvenile reference hearings do not limit the evidence heard to evidence "admissible in a criminal trial," as they do with respect to adjudicative hearings. *See* Minn.R.Juv.P. 32.04; *cf.* Minn.R.Juv.P. 27.-04. A leading commentary on juvenile practice indicates that, although the 1980 amendment to Minn.Stat. § 260.155, subd. 1 has superseded the prior supreme court cases allowing hearsay, the hearsay rule should be liberally interpreted in reference hearings. 12 John O. Sonsteng & Robert Scott, *Minnesota Practice* p. 508 (1985).

■ For purposes of the reference hearing the charges against the juvenile are presumed to be true. *In re Welfare of W.J.R.*, 264 N.W.2d 391, 393 (Minn.1978). Although evidence in the police reports of circumstances attending the offense may bear on the contested issues of amenability to treatment and threat to public safety, the juvenile may have the opportunity, as T.L.J. did here, to request that any questionable hearsay be stricken. Also, the juvenile has an opportunity to rebut, as T.L.J. did, portions of the police reports. We conclude that the hearsay rule should not be strictly applied to exclude police reports from reference hearings.

■ T.L.J. also contends the trial court abused its discretion in admitting a lab report and school report which had not been disclosed by the state. Based on the record, we conclude the lab report and school report were relatively insignificant, cumulative pieces of evidence and the failure to exclude them was, if error, harmless. *See State v. Daniels*, 332 N.W.2d 172, 179 (Minn.1983) (violation of discovery rules not grounds for mistrial where little or no prejudice resulted).

II.

■ A juvenile reference order will not be reversed unless its findings are clearly erroneous so as to constitute an abuse of discretion. *In Re Welfare of J.L.B.*, 435 N.W.2d 595, 598 (Minn.App.1989), *pet. for rev. denied* (Minn. Mar. 17, 1989). T.L.J. contends the trial court erred in ordering reference after finding T.L.J. failed to rebut the state's prima facie case.

■ The trial court concluded T.L.J. did not present the "significant" or "substantial" evidence required to rebut a prima facie case. *See generally In re Welfare of D.F.B.*, 433 N.W.2d 79, 81 (Minn.1988) ("significant" and "substantial" are interchangeable terms for quantum of evidence required to rebut a prima facie case). In *D.F.B.*, where the juvenile was charged with murdering four members of his family, the supreme court treated the favorable testimony of a single defense expert witness as constituting sufficient rebuttal evidence. *Id.*

T.L.J. presented not only the testimony of the two court-appointed experts, the psychologist and probation officer, but also that of T.L.J.'s former probation officer and the supporting testimony of a juvenile corrections worker and other witnesses. The trial court had to substantially discount that evidence in order to find "significant" or "substantial" defense rebuttal evidence was not presented.

■ The supreme court in *D.F.B.* referred to the evidence required to rebut a prima facie case as a "quantum of evidence." *Id.* A leading commentator on juvenile law asserts that the prima facie case shifts only the burden of production, not the burden of persuasion. Barry Feld, *Juvenile Court Legislative Reform and the Serious Young Offender: Dismantling the "Rehabilitative Ideal,"* 65 Minn. L.Rev. 167, 208, 215 (1981). The state in its brief concedes the burden of persuasion never shifts. It is the state, not the juvenile, which bears the ultimate burden of persuasion on adult reference. *See D.F.B.*, 433 N.W.2d at 81. The trial court here, however, could not have found the defense rebuttal insufficient unless it was weighing

it qualitatively with a view to the ultimate burden of persuasion.

The trial court clearly erred in weighing the defense rebuttal evidence, in effect placing a burden of persuasion on T.L.J. We note that the state presented no evidence bearing on either amenability or the time remaining for treatment in the juvenile system. The defense, as a matter of law, presented a substantial quantum of evidence rebutting the prima facie case.

■ We need not address the merits of the trial court's assessment of the reference study or the psychological evaluation. Moreover, since T.L.J. has presented rebuttal evidence and met his burden of production, the reference issue must be decided without regard to the prima facie case. *D.F.B.*, 433 N.W.2d at 81. Therefore, we need not address T.L.J.'s constitutional challenges to the prima facie reference statute.

We remand for further proceedings on the reference motion under the "totality of the circumstances" test, consistent with Minn.R.Juv.P. 32.04 and 32.05 and Minn. Stat. § 260.125 (1990). We need not address T.L.J.'s claim that the reference hearing was summarily terminated, except to note his entitlement to surrebuttal and a closing argument. Minn.R.Juv.P. 32.04, subd. 2(B)(v), (vii).

## DECISION

The trial court did not err in admitting the police reports in the reference hearing. The court clearly erred in ruling the defense had not presented substantial evidence rebutting the prima facie case.

Affirmed in part, reversed in part and remanded.