In the Matter of the WELFARE OF M.E.P., Juvenile (C8–94–1214), A.A.D., Juvenile (CX–94–1215), R.A.J., Juvenile (C1–94–1216), E.A.E., Juvenile (C3–94–1217).

Nos. C8–94–1214 to C3–94–1217.

Supreme Court of Minnesota.

March 22, 1995.

### AMENDED ORDER

Based upon all the files, records and proceedings herein,

IT IS HEREBY ORDERED that the motion of A.A.D. to accept a nonconforming petition for further review be, and the same is, granted.

IT IS FURTHER ORDERED that the petitions for further review filed in the above-entitled matter be, and the same are, denied.

IT IS FURTHER ORDERED that the motion to strike portions of the response filed by M.E.P. be, and the same is, denied.

BY THE COURT:
/s/ Alexander M. Keith
Chief Justice

PAGE, Justice, dissenting.

I respectfully dissent from this court's order denying the state's petition for further review regarding the reference of M.E.P. to district court. Our standard of review when determining whether a juvenile court erred in ordering or denying reference is for an abuse of discretion. *In re Welfare of D.F.B.*, 433 N.W.2d 79, 82 (Minn.1988). The record before us suggests the juvenile court committed an error of law and abused its discretion, thus warranting our review. In addition, there is a more compelling reason for this court to grant review. This case presents a striking example of why people of color, as reported in the Final Report of the Supreme Court Task Force on Racial Bias in the Judicial System, believe the judicial system is biased against them. The juvenile court's exercise of discretion here gives credence to that belief.[1]

---

1. The argument often made is that people of color are not treated the same as similarly situated white people. The person of color often believes they have had the law unfairly and improperly applied to them. This argument assumes that the law was applied to the similarly situated white person in a fair and proper manner. In reality, this assumption is not always correct. As a Justice on this court, and in my role as Chair of the Implementation Committee on Multicultural Diversity and Racial Fairness in the Courts, it has become apparent to me that "the disparity of

The juvenile court found that M.E.P. had rebutted the prima facie case for reference set out in Minn.Stat. § 260.125, subd. 3(2) (1994) (child over 16 alleged to have committed first-degree murder). Minn.R.Juv.P. 32.05, subd. 2 ("Rule 32.05"), states that if a prima facie case has not been established or has been rebutted by significant evidence, the court, in making its determination, shall consider the totality of the circumstances. On the record before us, there appears to be no significant evidence rebutting the prima facie case for reference. For that reason, I believe the juvenile court committed an error of law. However, even if we assume the state's prima facie case was rebutted, the record before us suggests public safety and protection are not served by having M.E.P. remain in the juvenile system.

The totality of the circumstances test requires the state to prove by clear and convincing evidence that M.E.P. is "not suitable to treatment or that the public safety is not served under the provisions of laws relating to juvenile courts." Minn.Stat. § 260.125, subd. 2(d)(2) (1994). Rule 32.05 sets out the factors[2] to be considered in determining whether a juvenile should be referred to district court. Applying the Rule 32.05 factors to M.E.P., the juvenile court appears to have erred in denying the state's motion to refer M.E.P. to district court.

In this case, a total of six evaluations were submitted to the juvenile court regarding M.E.P. They included four assessments by four separate psychologists, a report from a Dakota County Community Corrections (DCCC) juvenile probation officer, and a report from the guardian ad litem.

In assessing M.E.P, two of the psychologists addressed all of the Rule 32.05 factors. One recommended against referring M.E.P. even though he concluded that eight of the eleven factors favored reference. The other concluded that all of the factors favored reference. The DCCC juvenile probation officer addressed all of the factors and recommended referring M.E.P. to district court, while the guardian ad litem did not address any of the factors and recommended against referring M.E.P. The juvenile court appears to have relied on the testimony of two psychologists who considered only two of the eleven Rule 32.05 factors. They addressed factor (f), pertaining to the absence of adequate protective and security facilities available to the juvenile treatment system, and factor (k), pertaining to whether there is sufficient time available before the juvenile reaches age 19 to provide appropriate treatment and control. While Rule 32.05 does not mandate that each of the eleven factors be addressed when making a determination as to whether reference is appropriate, if they are not, it seems to me it would be difficult to make a proper determination.

Even if there is disagreement as to the juvenile's amenability to treatment, reference may be appropriate. *See, e.g., In re Welfare*

sentencing between people of color and whites," *see* Minnesota Supreme Court Task Force on Racial Bias in the Judicial System, *Final Report* 49–58 (1993), we see in the judicial system does not always result from the law being improperly applied to people of color. In many instances, that disparity is the result of the law being improperly applied to whites. This case presents one of those instances.

**2.** Minn.R.Juv.P. 32.05, subd. 2, lists those factors as:

\* \* \* \* \* \*

(a) the seriousness of the offense in terms of community protection,
(b) the circumstances surrounding the offense,
(c) whether the offense was committed in an aggressive, violent, premeditated or willful manner,
(d) whether the offense was directed against persons or property, the greater weight being given to an offense against persons, especially if personal injury resulted,
(e) the reasonably foreseeable consequences of the act,
(f) the absence of adequate protective and security facilities available to the juvenile treatment system,
(g) the sophistication and maturity of the child as determined by consideration of the child's home, environmental situation, emotional attitude and pattern of living,
(h) the record and previous history of the child,
(i) whether the child acted with particular cruelty or disregard for the life or safety of another,
(j) whether the offense involved a high degree of sophistication or planning by the child, and
(k) whether there is sufficient time available before the child reaches age nineteen (19) to provide appropriate treatment and control.

of D.F.B., 433 N.W.2d 79, 81–82 (Minn.1988). The evidence need only show that the juvenile "is not suitable to treatment *or* that the public safety is not served under the provisions of laws relating to juvenile courts." Minn.Stat. § 260.125, subd. 2(d)(2) (emphasis added). There is no requirement that both the unamenability and public safety requirements be met. *In re Welfare of D.T.N.*, 508 N.W.2d 790, 796 (Minn.App.1993), *pet. for rev. denied* (Minn. Jan. 14, 1994).

Because the experts disagree as to M.E.P.'s amenability to treatment, I believe the reference determination should turn on whether public safety is best served by M.E.P. remaining in the juvenile court system or by M.E.P. being referred to district court. In determining whether the public safety is served we consider the following:

> (1) The seriousness of the offense in terms of community protection; (2) the circumstances surrounding the offense; (3) whether the offense was committed in an aggressive, violent, premeditated, or willful manner; (4) whether the offense was directed against persons or property; (5) the reasonably foreseeable consequences of the act; and (6) the absence of adequate protective and security facilities available to the juvenile treatment system.

*In re Welfare of K.P.H.*, 289 N.W.2d 722, 725 (Minn.1980).

I believe the public safety is not served here by the juvenile court's refusal to refer M.E.P. to district court. The facts surrounding the offense, when viewed in light of the above criteria, lead to the following conclusions:

> (1) M.E.P. is alleged to have committed first-degree murder, obviously a serious crime. The callous and cold-blooded nature of the crime, as committed, gives a clear indication of dangerousness and of the threat to the public safety;
>
> (2) The circumstances surrounding the offense involve a shooting death over a drug debt. After the victim was shot, the juveniles involved moved the body and agreed to create a "story" to tell police. This shows the calculated nature of the shooting and the effort made to hide the truth;

> (3) The victim was shot at point blank range. M.E.P. has admitted that he held the gun to the victim's head and pulled the trigger, only to discover that the safety was engaged. M.E.P. then disengaged the safety mechanism, pointed the gun at the victims head a second time, and pulled the trigger. This manifests premeditation and also establishes the calculated nature of M.E.P.'s acts;
>
> (4) The offense was against a person and had a profound impact on the victim's family;
>
> (5) The victim's death was a foreseeable consequence of M.E.P.'s actions; and
>
> (6) Of the two psychologists who addressed whether there was sufficient time to provide adequate treatment and control, both concluded that the factor favored reference. Indeed, one wonders how any 16–year–old juvenile under these circumstances could possibly receive adequate treatment prior to his or her 19th birthday.

This court has held that the record must contain direct evidence of dangerousness, in addition to the inferences which may be drawn from the commission of the crime itself. *In re Welfare of K.P.H.*, 289 N.W.2d 722, 725 (Minn.1980). The record in this case contains direct evidence of M.E.P.'s dangerousness in addition to the inferences to be drawn from the commission of the crime itself. M.E.P. was aware of the presence of a loaded gun and used the gun to intimidate, bully, and ultimately kill Marc Stier. If the facts as alleged in the state's brief to the court of appeals are correct, there is additional evidence of M.E.P.'s dangerousness. This evidence includes testimony from the court-appointed psychologist that M.E.P. admitted committing 230–270 felony offenses and a dozen misdemeanor offenses. M.E.P.'s juvenile criminal history includes a consumption violation, a curfew violation, unlawful discharge of fireworks, and a trespass. His disciplinary record while a student at Prior Lake High School includes involvement in two fights.

In a factually similar case, the court of appeals, in a May 1994 unpublished opinion, determined the juvenile court had not abused

its discretion in referring M.R.G. to district court. *In re Welfare of M.R.G.*, District Court File No. 175836–97, 1994 WL 193702 (Minn.App. May 17, 1994). M.R.G. was 16 at the time of the offense and was charged with first-degree premeditated murder and second-degree intentional murder. The charges arose out of a shooting that occurred while M.R.G. was at a party with his mother and girlfriend. During the party, another individual present, Mays, began to flash rival gang symbols at him. In addition, Mays threatened to tie up and rape M.R.G.'s mother. In response, M.R.G pulled out a gun, and from a distance of four feet, shot and killed Mays.

M.R.G's only prior adjudication was for truancy. Two psychologists examined M.R.G.; one recommended reference based on the seriousness of the offense and his danger to the public, and the other recommended against reference, based on his conclusions that M.R.G. had no history of violent behavior, the shooting was not predatory in nature and was an isolated incident. On the facts presented, the juvenile court's reference of M.R.G. was appropriate based on his danger to the public.

When we compare the facts used by the juvenile court to deny the state's motion for reference of M.E.P. with those used to refer M.R.G., it is clear the court in *M.E.P.* abused its discretion. Both cases involve juveniles with no prior record, charged with the offense of first-degree murder. Both juveniles were 16 years old at the time of the offense and both used a handgun to shoot their victim at point-blank range. In M.R.G.'s case, there was no history of violent behavior and in M.E.P.'s case there was a history of fighting. The shooting in M.R.G's case resulted from the victim threatening to tie up and rape M.R.G's mother, while in M.E.P.'s case the shooting arose out of M.E.P's efforts to collect a drug debt. The nature of M.R.G.'s acts clearly supports the juvenile court's decision to refer M.R.G. The nature of the acts committed by M.E.P. are essentially the same and support a similar conclusion. There are no separate facts in M.E.P.'s case which suggest or support denying reference.

The only significant distinction between M.E.P. and M.R.G. is that M.E.P. is white and M.R.G. is black. As noted above, I believe that M.R.G. was properly referred to district court. I also believe it was improper not to refer M.E.P. That decision was unjust. The injustice here is not that M.R.G. was treated improperly, but that the juvenile court, in refusing to refer M.E.P., applied our reference rules and law improperly, resulting in more lenient treatment for M.E.P.

In *State v. Williams*, 525 N.W.2d 538 (Minn.1994), we stated that "we are not unmindful of nor insensitive to the growing body of evidence relating to '[t]he disparity of sentencing between people of color and whites.'" *Id.* at 549 (quoting Minnesota Supreme Court Task Force on Racial Bias in the Judicial System, *Final Report* 49 (1993)). Recognizing this fact, this court went on to state its intent to "closely monitor and scrutinize sentencing practices to insure that defendants of color are not given harsher sentences * * * than Caucasian defendants." *Id.* Reference decisions directly impact a juvenile's confinement. For that reason, it is imperative that cases involving similar offenses be scrutinized in order to ensure that all juveniles are treated the same regardless of color. By denying the state's petition for further review, we fail to live up to the commitment we made in *Williams* and our responsibility as judges of this court.

Therefore, I dissent.