**STATE of Minnesota, Respondent,**

**v.**

**Justin Marshall CRITT, Appellant.**

**No. C4–96–33.**

Court of Appeals of Minnesota.

Sept. 10, 1996.

Review Denied Nov. 20, 1996.

Hubert Humphrey, III, Attorney General, Thomas R. Ragatz, Asst. Attorney General, St. Paul, Joseph A. Evans, Becker County Attorney, Detroit Lakes, for Respondent.

Chad M. Oldfather, Special Asst. State Public Defender, Minneapolis, for Appellant.

Considered and decided by HUSPENI, P.J., and RANDALL and AMUNDSON, JJ.

**OPINION**

HUSPENI, Judge.

This appeal is from a judgment of conviction for first-degree arson. Minn.Stat. § 609.561, subd. 3 (1994). Appellant Justin Critt challenges the admissibility of his statement to police. Because we find that there was no substantial violation of the *Scales*

recording requirement and that appellant's confession was voluntary, we affirm.

## FACTS

Appellant Justin Critt and his accomplice, Donald Kramer, were charged with first-degree arson in connection with a fire on November 6, 1994, at the Detroit Lakes Junior High School. Critt was 17 years old at the time of the fire, but was certified to stand trial as an adult.

Police took photos and videotape of the fire scene, then obtained an audiotape of Kramer admitting his involvement in the fire to a police informant. They interviewed Kramer and obtained a confession implicating Critt as an accomplice. Shortly thereafter, they questioned Critt, who had been appearing at the courthouse on another charge, escaped briefly from police custody, and was then recaptured.

Deputy John Bellefeuille and Deputy State Fire Marshal Richard Brolsma interviewed Critt in a "contact room" in the county jail. Deputy Bellefeuille testified that he had two tape recorders in the room, which he turned on immediately, before any conversation occurred. Critt's recorded statement begins with Deputy Bellefeuille's explanation that he is required to record the conversation, followed by a recitation of the *Miranda* warning. Critt declined to talk with the officers, and the interview ended at 10:30 a.m.

The taped statement resumed four minutes later, with Critt asking, "You got the videotape?" Deputy Bellefeuille then states the time (10:34 a.m.) and his understanding that Critt had "reinitiated some communications here." Critt proceeded to confess to the arson. At the end of the taped statement, Critt again asked, "But you guys really had a video?"

Deputy Bellefeuille testified that he turned the tape recorders off after Critt's initial refusal to talk and left the room to ask a jailer to move Critt from the contact room. Deputy Bellefeuille testified he was gone about three or four minutes. He testified:

> When I got back to the contact room and informed him it's going to be just a couple of minutes, Justin Critt I recall asking me if I had videotape and I told him, "Yeah, I've got videotape." And he smiled at me and said, "Well, come on back in," and motioned me, come on back in, sit down, let's talk about this.

Critt testified that he was told before the tape recorder was turned on that police had a videotape of him burning the school. He testified that when Deputy Bellefeuille left the room Deputy Fire Marshal Brolsma talked to him about the videotape and how much easier it would be on him if he confessed.

Deputy Fire Marshal Brolsma testified that after Deputy Bellefeuille left the room, he told Critt only that he and the other investigators already had enough information, and that they had just wanted to hear Critt's side of the story. He denied bringing up the subject of the videotape.

Critt filed a pretrial motion to suppress the taped statement in which he admitted setting the fire, along with Kramer. Critt claimed that the confession was involuntary and taken in violation of the reporting requirement of *State v. Scales*, 518 N.W.2d 587 (Minn.1994).

The trial court denied Critt's motion, finding that police did use the nonrecorded portion of the conversation with Critt to suggest that they had a videotape of him in the act of committing arson, and that "*Scales* was violated," but that the false representation of the videotape's existence did not render the confession involuntary.

Critt waived his right to a jury trial, and agreed to a trial to the court based on stipulated facts. The trial court issued an order finding him guilty, and he was later sentenced to 48 months for the offense.

## ISSUES

1. Did police commit a "substantial violation" of the *Scales* recording requirement so as to require suppression of appellant's statement?

2. Was appellant's statement voluntary?

## ANALYSIS

### I.

■ Critt argues that his confession should have been suppressed because police in questioning him violated the recording requirement of *State v. Scales*, 518 N.W.2d 587 (Minn.1994). The trial court's factual findings are subject to a clearly erroneous standard of review, but the question whether there was a "substantial violation" of *Scales* is a legal one that this court reviews de novo. *See generally State v. Hardimon*, 310 N.W.2d 564, 567 (Minn.1981) (standard of review of factual and legal issues in voluntariness determinations).

The supreme court in *Scales* held that all "custodial interrogation," including "all questioning," had to be recorded "when questioning occurs at a place of detention," as it did in this case. 518 N.W.2d at 592. The court stated, with respect to the suppression of unrecorded statements:

> The parameters of the exclusionary rule applied to evidence of statements obtained in violation of these requirements must be decided on a case-by-case basis. Following the approach recommended by the drafters of the Model Code of Pre–Arraignment Procedure, suppression will be required of any statements obtained in violation of the recording requirement if the violation is deemed "substantial." This determination is to be made by the trial court after considering all relevant circumstances bearing on substantiality, including those set forth in [section] 150.3(2) and (3) of the Model Code of Pre–Arraignment Procedure.

*Id.* (footnote omitted). The nonexclusive list of factors from the Model Code includes the willfulness of the violation, the extent of the deviation from lawful conduct, the extent to which the violation was likely to lead to a misunderstanding of legal rights, and the extent to which suppressing the statement

would "tend to prevent [other] violations." *Id.* at 592 n. 5.

Critt argues that the "substantial violation" to which *Scales* refers should not be confused with a violation of a suspect's constitutional rights. We agree. *Scales* suggests as much, holding that a statement may be suppressed for a "violation of the recording requirement."[1] 518 N.W.2d at 592. *Scales* does not include in its list of factors a prerequisite that there be a constitutional violation.

■ Critt argues that the four-minute gap in the recording of his conversation with police was a "substantial violation" of the *Scales* recording requirement. We disagree.

The purpose of the recording requirement is to "assist the trial court in the resolution of evidentiary disputes and in more accurately determining the underlying facts." *State v. Thaggard*, 527 N.W.2d 804, 807–08 (Minn. 1995). There was a factual dispute in this case as to *when* police told Critt that they had a videotape of the arson. But police admitted making this false representation, and it is referred to on the tape recording. The tape recording that was made of the two segments of the interview did refute any claim by police that they did not deceive Critt by telling him there was a videotape. The trial court accepted Critt's version of the disputed untaped conversations. We conclude that the underlying purpose of *Scales* was satisfied, despite the "gap" in the tape recording.

The record also indicates that the *Scales* violation was unintentional. Deputy Bellefeuille had good reason to turn off the tape recorder, because Critt had declined to give a statement. Deputy Bellefeuille then left the room to find a jailer to move Critt.[2] Considering this activity, the four-minute "gap" in the tape recording of the interview is not so long as to indicate a willful violation.

---

1. While the trial court found that *Scales* was violated, it did not indicate that the violation was "substantial" nor did the trial court discuss the availability of suppression based solely on the violation of the recording requirements rather than on the basis of violation of constitutional rights.

2. For purposes of this analysis, we consider Deputy State Fire Marshal to be the equivalent of a peace officer. *See generally* Minn.Stat. §§ 299F.05, .08 (1994) (discussing investigative powers of state fire marshals).

Deputy Bellefeuille reactivated the tape recorder promptly upon learning that Critt had decided to talk. In fact, the tape recording caught the last portion of the informal conversation concerning a videotape. If Deputy Bellefeuille had intended to use the "gap" in recording to conceal any police misconduct, he could have waited until that conversation was over, and the actual statement was ready to be taken, before turning the tape recorder back on.

Because any *Scales* violation was not intentional, suppressing Critt's confession would not tend to prevent other *Scales* violations. If there is a valid reason for turning off the tape recorder, as there was here when Critt refused to give a statement, police who are engaged in other noninterrogative activities cannot always reactivate the recording in time to capture all relevant conversation.

Finally, the "gap" in the tape recording did not significantly deprive the trial court of the accurate record needed to decide the substantive issue. The purpose of the *Scales* requirement, "to assist the trial court in the resolution of evidentiary disputes," *Thaggard*, 527 N.W.2d at 807, was not significantly violated in this case.

## II.

Critt argues that his confession was involuntarily given, primarily because the police falsely represented that they had a surveillance videotape showing him committing the arson. This court is not bound by the trial court's determination on the voluntariness issue. *Id.* This court is to independently determine, based on all factual findings not clearly erroneous, whether the confession was voluntary. *Id.*

The trial court in finding that Critt's confession was not involuntarily given, concluded that police deception is acceptable police practice. This conclusion is erroneous. In *Thaggard*, analyzing a false police statement that the defendant's accomplice had confessed, the supreme court stated, "we caution police that they proceed on thin ice and at their own risk when they use deception of the sort used in this case." *Thaggard*, 527 N.W.2d at 810. The court, however, noted that

lying to a suspect as to the strength of the state's case against him generally is not by itself enough to render a confession involuntary.

*Id.; see also State v. Barner*, 486 N.W.2d 1, 3 (Minn.App.1992), *reversed on other grounds*, 510 N.W.2d 202 (Minn.1993).

When police questioned Critt they did have Kramer's statement admitting to the arson and identifying Critt as his accomplice. Deputy Bellefeuille testified, however, that he wanted to protect the identity of the informant who had secretly taped Kramer's initial admission. Police, therefore, did have strong evidence against Critt, although nothing as strong as the surveillance videotape they claimed to have. The police deception weighs against admission of Critt's confession.

Despite our disagreement with the trial court on the acceptability of police deception, this court must look to all relevant factors in determining whether Critt's confession was voluntarily given. *Thaggard*, 527 N.W.2d at 808.

> These factors include the defendant's age, maturity, intelligence, education, experience and ability to comprehend; the lack of or adequacy of a warning; the length and legality of the detention; the nature of the interrogation; and whether the defendant was deprived of physical needs or denied access to friends.

*Id.*

Our consideration of all relevant factors present in this case convinces us that Critt's confession was voluntary. Critt was 17 years old at the time of the interrogation, but had had extensive involvement with the juvenile court system. The *Miranda* warning was properly given, and Critt had been only briefly detained and questioned when he confessed.

We recognize that police made no effort to contact a parent before questioning him. *See, e.g., In Re Welfare of M.E.P.*, 523 N.W.2d 913, 920 (Minn.App.1994) (presence or absence of parents is one factor in voluntariness of juvenile's confession), *review denied*, 528 N.W.2d 240 (Minn.1995). There is

no evidence, however, that Critt was deprived of physical needs. In sum, those factors favoring suppression, principally Critt's age and educational level, are counterbalanced by his extensive experience with the court system and his intelligence level.

There is a minimal omnibus hearing record regarding many of the relevant circumstances surrounding the confession. However, we cannot conjecture regarding matters about which the record is silent. On the record before us, we cannot find the coercive circumstances [3] necessary to render Critt's confession involuntary.

### DECISION

Appellant's confession was properly ruled admissible. Police did not commit a substantial violation of the *Scales* recording requirement, and the confession was not involuntary.

**Affirmed.**

---

3.  In concluding that there is an inadequate basis in the omnibus record to establish coercive circumstances, we note that this is an issue distinct from the "gap" in the tape discussed in reference to the alleged *Scales* violation.